## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GWENDOLYN GAY and | § | |
| GWENDOLYN MOMON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-1161 |
| | § | |
| ARAMARK UNIFORM AND CAREER | § | |
| APPAREL, INC. and CHRISTOPHER | § | |
| MURPHY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Gwendolyn Gay and Gwendolyn Momon sued their former employer, Aramark Uniform and Career Apparel, Inc. ("Aramark"), and an Aramark supervisor, Christopher L. Murphy, in Texas state court. They alleged sexual harassment and violations of the Texas Commission on Human Rights Act (TCHRA), retaliatory treatment, assault and battery, intentional infliction of emotional distress, negligent hiring and supervision, and discrimination on the basis of race. The defendants timely removed on the basis of federal question jurisdiction.

Aramark has moved for summary judgment. (Docket Entry Nos. 6, 7). The plaintiffs have responded, (Docket Entry No. 10); and Aramark has replied, (Docket Entry Nos. 14, 15). Murphy has also moved for summary judgment. (Docket Entry Nos. 11, 12). The

plaintiffs have responded, (Docket Entry No. 16); and Murphy has replied.  (Docket Entry Nos. 17, 19).

Based on the motions and responses and the applicable law, the court grants Aramark's motion for summary judgment on Momon's claims, grants Aramark's motion for partial summary judgment on Gay's claims, grants Murphy's motion for summary judgment on Momon's claims, and grants in part and denies in part Murphy's motion for partial summary judgment on Gay's claims.  A status conference to address the remaining claims and set a schedule to resolve them is set for **December 19, 2007 at 2:00 p.m.** in Courtroom 11B.  The reasons for these rulings are set out below.

I.      **Background**

       A.      **Gwendolyn Gay**

Aramark hired Gay in 1998 as a receptionist.  She was promoted to the position of Customer Service Coordinator approximately six months later.  Although Murphy did not supervise Gay, she had to meet with him in his office two or three times a week.  Gay alleges that whenever she entered his office alone, Murphy would turn to her, lean back in his chair, and start "jerking himself up in his crotch area" while staring at her.  (Docket Entry No. 6, Ex. 1 at 246).  She asked him to stop this behavior, but he did not.  Gay alleges that during her employment, "[t]he degree of sexual harassment began to escalate, culminating in physical contact."  (Docket Entry No. 10 at 4).  She alleges that on August 8, 2005, Murphy came up from behind her and pinched her buttocks.  She asserts that she was "taken aback and extremely distressed" and asked him not to do that again.  (*Id.* at 4).

On August 13, 2005, there was a company-sponsored party on a boat on Clear Lake. Employees were not required to attend and the party did not occur during business hours. Gay alleges that at the party, Murphy again approached her from behind, grabbed her buttocks, and inserted the middle finger of his right hand into her anus.  Gay screamed, pushed him away, and yelled at him not to ever do that to her again.  Before he walked away, Murphy told her that he "had to know what that felt like."  (Docket Entry No. 6, Ex. 1 at 56). Gay immediately sought out her supervisor, General Manager Brian Gonzales, and reported what had happened.  Gonzales said that he would "handle it."  (Docket Entry No. 10 at 4). Shortly afterwards, Murphy confronted Gay about speaking to Gonzales.  Murphy threatened to tell Gonzales that Gay had touched him and that it would be his word against hers. (Docket Entry No. 6, Ex. 1 at 58, Ex. 2).

Gay did not come into work the following Monday.  She reported the incident to Aramark's Human Resources by telephone that day, speaking to two different employees. Both employees told Gay that they would speak to Gonzales about the incident.  When Gay returned to work the next day, Gonzales had Gay write a statement about what had happened on the boat.

Aramark gave Murphy a written warning that future similar incidents would result in the termination of his employment.  Aramark also instructed Murphy to avoid any interactions with Gay.  Following the party, Gay did not see Murphy again except for one instance when they passed each other in the hallway.

Gay alleges that after the party, she had to continue working under Murphy's supervision and that the working environment was "what she considered a hostile work environment." (Docket Entry No. 10 at 5). She alleges that Barbara Melchior, the controller, had a post on her filing cabinet that read, "A monkey is still a monkey even if you do work on a computer," which Gay took to be a racial comment. (Docket Entry No. 6, Ex. 1 at 269). She also alleges that another coworker, Maxine Baggett, called a customer with whom she had spoken on the phone a "monkey," which Gay found racially offensive. In addition, Gay alleges that Mark Buchanan, a district manager, acted hostile and was disrespectful to her after the incident with Murphy on the boat. In her deposition, Gay testified that a coworker told her that Buchanan had said, "Stay away from that black bitch. She got a manager fired for touching her on her ass at a company outing." (Docket Entry No. 6, Ex. 1 at 267).

### B.    Gwendolyn Momon

Momon worked for Aramark for almost 16 years before her employment was terminated in October 2005. During the last two years of her employment, Momon filed state and federal complaints about Aramark's "wage and hour practices." (Docket Entry No. 10 at 5). During this period, Murphy was transferred to Momon's office as a district manager.

Momon alleges that whenever Murphy was in her presence and they were alone, he frequently touched and grabbed his crotch "in an extremely lewd manner." (Docket Entry No. 10 at 6). On September 16, 2005, Momon was in a convenience store, leaning over the counter while talking to the store clerk. While she was leaning over the counter, Murphy entered the store and approached her from behind. He placed his hands on her shoulders and

pressed his crotch against her buttocks.  Momon screamed, pushed him away, and yelled at him not to do that to her again.

Momon reported the incident to a supervisor named Amy, who took no action. Momon alleges that after she spoke to Amy about the incident, Amy developed a negative attitude toward her.  Momon also alleges that she reported Murphy to Aramark's Human Resources and was told that someone would get in touch with her, but no one did.  In addition, Momon alleges that she soon began to receive "unsolicited 'advice' from colleagues and vendors . . . that she needed to 'watch her back' because Defendant Aramark's management was coming after her and wanted to get rid of her."  (Docket Entry No. 10 at 6).

Momon's employment was terminated in October 2005.  The parties dispute the reason for the termination.  Aramark asserts that Momon was laid off in a reduction in force.  (Docket Entry No. 7 at 2).  Momon contends that she was one of the more senior employees in her unit and that she was fired because she was black.  On November 4, 2005, Momon filed a complaint of racial discrimination with the EEOC.  (Docket Entry No. 7, Ex. A).  On March 16, 2004, Momon signed a "Release and Separation Agreement."  On March 24, 2005, Momon signed a negotiated settlement agreement.  In exchange for her signature on the agreement, she received $3,923.20 from Aramark.  The Release and Separation Agreement stated in part:

> You and Employer agree that, in exchange for the payment and promises described below, you release Employer, and its parents, subsidiaries and affiliates, and current and former

5

agents, employees, and anyone else acting on its behalf, from any and all legal claims, complaints, suits, demands, liabilities or rights of any time, and those under any federal, state, or local law or regulation that exist as of the date of this agreement including, but not limited to, claims arising out of your employment or the separation of your employment from Employer.  This release includes, but is not limited to, claims for: breach of any express or implied employment contracts or covenants; entitlement to any pay (other than the pay promised in this Agreement), including insurance; wrongful termination, public policy violations . . . emotional distress or other common law matters; claims based on Title VII of the Civil Rights Act . . .; discrimination based on race, sex, age, religion, national origin, disability, medical condition, veteran status, sexual preference, union activity, marital status or any other basis; or retaliation.

(Docket Entry No. 7, Ex. D).  Momon asserts that she was coerced into signing the release it without the benefit of counsel or an explanation.

Aramark has moved for summary judgment on Momon's claims and for partial summary judgment on Gay's claims.  Aramark argues that Momon released her claims against Aramark in the parties' settlement of the EEOC complaint that Momon filed. Aramark argues that Gay has failed to show that a disputed fact issue exists as to her claims for *quid pro quo* sexual harassment, hostile work environment sexual harassment, or retaliation.  Aramark also argues that Gay's claim for intentional infliction of emotional distress is precluded under the Texas Supreme Court's decision in *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004), and that her claims for assault and battery, negligence, and negligence are barred under the TWCA.

Murphy has moved for summary judgment on Momon's claims and for partial summary judgment on Gay's claims.  Murphy argues that Momon released her claims when she signed the release agreement as part of the settlement of her EEOC complaint against Aramark.  Murphy argues that Gay cannot recover on her claims against him for sexual harassment, racial discrimination, or retaliation because he is not an "employer" under the TWCA or TCHRA.  He also argues that Gay's claims for intentional infliction of emotional distress, negligence, and gross negligence are precluded under *Zeltwanger* and the exclusive remedy provision of the TWCA.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,*

7

402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action."  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004).  This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence."  *Young v. Exxonmobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800.  "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

8

### III.   Analysis

#### A.   Aramark's Motions for Summary Judgment

##### 1.   Gwendolyn Momon's Claims

Aramark moves for summary judgment on Gwendolyn Momon's claims on the ground that the release and settlement agreement she signed "is dispositive of all claims she has asserted in this case." (Docket Entry No. 7 at 3).  Aramark contends that Momon voluntarily and knowingly executed the release in exchange for receiving a settlement payment and that she has neither identified nor submitted evidence of fraud, duress, or incompetence. Although Momon asserts that she needed the money so badly that she felt compelled to sign the release, Aramark argues that such personal financial hardship does not rise to the level of economic duress.  Aramark also points out that the settlement and release were negotiated during an EEOC mediation, when Momon had the assistance of an EEOC investigator, and that she accepted and kept the $3,923.20 Aramark paid.

Momon argues that there is a disputed fact issue as to whether the release is void due to fraud, duress, or incompetence because Aramark "does not provide any affidavits, depositions, or discoverable materials showing that Plaintiff Momon acted of her own volition and was aware of any material facts surrounding the execution of the Release." (Docket Entry No. 10 at 20).  Momon contends that Aramark reduced her wages and ultimately terminated her employment to coerce her into signing the release "as part of an ongoing scheme or practice to defraud lower-level sexually harassed victim-employees from any legitimate recovery." (*Id*. at 22).  She argues that she signed the release and settlement

9

agreement "on the basis of wrongful discharge and race discrimination," not the sexual harassment claim.  (*Id.* at 7).

Momon's argument that Aramark's summary judgment motion fails because Aramark has not shown that she signed the release voluntarily is not persuasive.  Aramark has submitted a copy of the signed release agreement.  A release extinguishes a claim or cause of action and bars recovery on the released matter.  *Dresser Inds., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).  A release is subject to the rules of governing contract interpretation. *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract she signed, regardless of whether she read it or thought it had different terms.  *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (citing *EZ Pawn Corp v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)).  When parties enter into an agreement based on a writing that is not ambiguous, the court will give effect to the parties' intention as expressed in the writing.  *Id.* (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)).

Momon signed a release providing that in exchange for payment, she would release Aramark from "any and all legal claims, complaints, suits, demands, liabilities, or rights of any type."  (Docket Entry No. 7, Ex. D).  The release further stated, "You [Momon] acknowledge that this Agreement resolves all legal claims you may have against [Aramark] . . . as of the date of the agreement, whether known or unknown."  (*Id.*).  The release provided:

> You further agree that you have had sufficient time to consider this agreement, specifically up to 21 days . . . . Since this agreement does not become payable, effective or enforceable for seven (7) days after you have signed it, you may revoke it during this seven- (7) day period if you wish.  You further acknowledge that you were advised to consult an attorney, if desired, before signing this agreement and that this agreement has been individually negotiated and is not part of a group exit incentive or other termination program.

Momon's contention that she signed the release, "without the benefit of counsel or an explanation," (*id.* at 8), does not raise a fact issue as to whether the release is valid or enforceable.  *See McKinney*, 167 S.W.3d at 835.

Momon's argument that she signed the release "only on the basis of wrongful discharge and race discrimination," not sexual harassment, is similarly unpersuasive. (Docket Entry No. 10 at 7).  Momon does not and could not assert ambiguity.  The release covers "all legal claims you may have against [Aramark]."  (Docket Entry No. 7, Ex. D). Momon has not raised a fact issue as to whether the parties intended to limit the effect of the release to her claims based on wrongful discharge and race discrimination and not release her claims of sexual harassment and discrimination.

Momon argues that she was induced by fraud or economic duress to sign the release agreement.  Duress results from pressures that make a person incapable of exercising her free agency and destroy the power to withhold consent.  *Dallas County Community College Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005).  The compulsion must be actual and imminent, not merely feigned or imagined.  *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).  The mere fact that a person enters a contract with reluctance, or as a result of the pressures of

business circumstances, does not, of itself, constitute economic duress invalidating the contract." *ABB Kraftwerke Aktiengesellschaft v. Brownvsville Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex.App.–Corpus Christi 2003, pet. denied) (citing *First Tex. Sav. Ass'n of Dallas v. Dicker Ctr., Inc.*, 631 S.W.2d 179, 186 (Tex.App.–Tyler 1982, no writ). Momon does not produce or point to evidence in the record to support her claim that the release is invalid or unenforceable because she signed under "duress."  To survive a summary-judgment motion, a plaintiff cannot rest on her allegations, but rather must identify specific evidence in the record and articulate the manner in which that evidence supports her claim. *See Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004).  The record does not provide any basis for an inference that Aramark coerced Momon into executing the release agreement in furtherance of "an ongoing scheme or practice to defraud lower-level sexually harassed victim-employees from any legitimate recovery." (Docket Entry No. 10 at 22).

Momon has failed to raise disputed fact issues material to determining the scope and validity of the release and settlement agreement.  As a matter of law, the release and settlement agreement preclude her claims against Aramark.  The summary judgment motion as to Momon's claims is granted.

## 2.    Gwendolyn Gay's Claims

Aramark moves for summary judgment on Gay's sexual harassment claims, as well as her claims for retaliation, intentional infliction of emotional distress, assault and battery, and negligence.  The parties' arguments on each claim are analyzed separately below.

12

### a.  *Quid Pro Quo* Sexual Harassment

Aramark argues that no fact issue is present as to Gay's claim for *quid pro quo* sexual harassment under the TCHRA because such harassment must involve the employee's supervisor and a "tangible employment action."  (Docket Entry No. 6 at 8).  Aramark argues that Murphy did not supervise Gay and she did not suffer a tangible employment action.

Gay responds that Murphy qualifies as a supervisor under Title VII "because, as the district manager, he had the apparent authority to direct her daily work activities in that Ms. Gay's immediate supervisors reported directly to him." (Docket Entry No. 6 at 12).  She also contends that she suffered tangible employment action in that she became "the target of unwarranted attendance warnings that progressed to accusations for which she had no proof she was not the responsible party and that culminated in being denied overtime privileges for no apparent reason."  (*Id.* at 12–13).

The TCHRA is to "provide for the execution of policies of Title VII of the Civil Rights Act of 1964."  Tex Lab. Code § 21.001(1); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001) "'[A]nalogous federal statutes and the cases interpreting them guide' the reading of the statute."  *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir.2004) (quoting *Quantum*, 47 S.W.3d at 476).  The Fifth Circuit has established a methodology for analyzing supervisory sexual-harassment cases under Title VII.  First, a court must determine whether the complaining employee suffered a "tangible employment action." *Russell v. Univ. of Tex. of Permian Basin*, 234 Fed.Appx. 195, 201 (5th Cir. 2007); *see also Casiano v. AT&T Corp.*, 213 F.3d 278 (5th Cir. 2000).  If she has, the

claim is classified as a "*quid pro quo*" case.  If she has not, the claim is classified as a "hostile environment" case.  To recover against a employer on the basis of vicarious liability in a *quid pro quo* sexual harassment case, the employee must show that the tangible employment action resulted from a supervisor's sexual harassment.  *Russell*, 234 Fed.Appx. at 201.  A "tangible employment action" is "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 425 U.S. 742, 761 (1998); *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481–82 (5th Cir. 2002).

Gay asserts that she suffered tangible employment action because she was denied overtime privileges and was constructively discharged.  (Docket Entry No. 10 at 13).  Aramark points out that in her deposition, Gay testified that she had never been demoted or received a reduction in pay.  (Docket Entry No. 6, Ex. A at 46–47).  Gay neither produces nor points to any evidence in the record creating a fact issue as to whether she suffered a tangible employment action.  To survive a summary judgment motion, a plaintiff cannot rest on her allegations, but rather must identify evidence in the record and articulate the manner in which that evidence supports her claim.  *See Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004).  Gay has failed to raise a fact issue as to whether she suffered a tangible employment action.

The record also defeats Gay's argument that the tangible employment actions she identifies resulted from Murphy's sexual harassment.  A plaintiff alleging *quid pro quo* sexual harassment must show that "the tangible employment action suffered by the employee

resulted from his acceptance or rejection of his supervisor's alleged sexual harassment." *See Casiano*, 213 F.3d at 283–84.  Gay alleges that after Murphy's sexual harassment, she "was the target of unwarranted attendance warnings that progressed to accusations for which she had proof she was not the responsible party and that culminated in denied overtime privileges for no apparent reason.  The changes in the demeanor and professional treatment by her supervisors negatively altered her work assignment which resulted in changes to her compensation."  (Docket Entry No. 10 at 12–13).  In response to the summary judgment motion, Gay points to no evidence in the record showing how these actions resulted from her rejection of Murphy's sexual harassment.  Gay testified in her deposition that the "changes in the demeanor and professional treatment by her supervisors" she observed were racially offensive and did not involve Murphy.  Gay testified that she experienced hostility from coworkers and supervisors other than Murphy, as a result of racial animus.  She did not identify or present evidence raising a fact issue as to a nexus between any tangible employment action and her rejection of Murphy's sexual harassment.

Gay has failed to create a fact issue as to her claim for *quid pro quo* sexual harassment.  Aramark's motion for summary judgment on this claim is granted.

### b.    Hostile Work Environment Sexual Harassment

Aramark argues that Gay has also failed to create a fact issue as to her hostile work environment sexual harassment claim.  In response, Gay maintains that she "was the target of unwarranted attendance warnings that progressed to accusations for which she had proof she was not the responsible party and that culminated in being denied overtime privileges for

no apparent reason." (Docket Entry No. 10 at 13). She does not otherwise respond to Aramark's arguments.

In a hostile work environment sexual harassment case, the court must inquire whether the supervisor's actions constituted "severe or pervasive" sexual harassment. *LaDay*, 302 F.3d at 482. If the conduct was not severe or pervasive, the employer cannot be held vicariously liable for the supervisor's actions. If the conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish an affirmative defense. *Id.* To establish an affirmative defense under *Ellerth* and *Faragher*, the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. *Id.*

For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *McKinnis v. Crescent Guardian, Inc.*, 189 Fed.Appx. 307, at *2 (5th Cir. 2006) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "The challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). To determine whether an environment is hostile or abusive within the meaning of Title VII, courts look at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Harris v. Forklift*, 510 U.S. 17, 23 (1993)). Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *McKinnis*, 189 Fed.Appx. 307, at *2 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). However, "the deliberate and unwanted touching of [a victim's] intimate body parts can constitute severe sexual harassment." *Harvill*, 433 F.3d at 436.

Gay's allegations and evidence of at least two instances of unwanted physical touching of intimate body parts, including one instance at the workplace, meets her summary judgment burden. Aramark argues that the most serious harassment—the incident on the boat—did not occur in the workplace, as at least one Texas court requires for a hostile work environment claim. *See, e.g.*, *Nardini v. Continental Airlines, Inc.*, 60 S.W.3d 197, 201 (Tex.App.—Houston [14th Dist.] 2001). However, Gay has alleged at least two instances of unwanted physical touching of her intimate body parts, one of which did occur in the workplace. Aramark cites *Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871, 872 (5th Cir. 1999), to support its argument that "[a]llegations of physical touching do not necessarily establish that alleged conduct will rise to the level of an actionable hostile work environment," (Docket Entry No. 6 at 12). However, *Shepherd* involved only touching of the victim's arm and shoulder.

Aramark has also asserted the affirmative defense under the *Ellerth*/*Faragher* line of cases. Aramark asserts and submits summary judgment evidence showing that it took reasonable steps to prevent future harassment right after Gay complained. *See Wyatt*, 297

17

F.3d at 409.  The parties do not dispute that right after Gay complained of the incident on the boat, Brian Gonzales, Gay's supervisor, promptly investigated her complaint, obtained a written statement about the incident from her, and issued a final written warning to Murphy. He also instructed Murphy to avoid future interactions with Gay.  (Docket Entry No. 6, Ex. C).  Gay acknowledged in her deposition that after she complained to Aramark about the incident on the boat, she only encountered Murphy once while passing him in the hall. (Docket Entry No. 6, Ex. A at 140–41).  The parties do not dispute that Aramark had an established complaint procedure to promote a "harassment free workplace policy," (Docket Entry No. 6, Ex. A at 97), and that Gay did not complain of any other action by either Murphy or any other Aramark employees, (*id.*, Ex. A at 89–90).

Aramark's motion for summary judgment on Gay's hostile work environment sexual harassment claim is granted on the basis of the affirmative defense.

### c.    Retaliation

Aramark moves for summary judgment on Gay's retaliation claim on the grounds that this claim is untimely under the Texas Labor Code and that Gay has failed to raise a fact issue as to whether she suffered an adverse employment action.  Under the Texas Labor Code, a plaintiff must file suit within sixty days after notice of the right to file a civil action is received.  TEX. LAB. CODE § 21.254.  Aramark contends that Gay received her right to sue letter on October 23, 2006, but that she did not assert a claim for retaliation in her second amended petition until February 21, 2007.  In addition, Aramark argues that Gay has failed to show that she suffered a materially adverse action because she engaged in a protected

18

activity.  Aramark asserts that the two allegedly retaliatory actions Gay identifies —receiving a written attendance warning despite allegedly having used only approved leave time, and not being approved to work overtime—do not amount to materially adverse actions that support a retaliation claim.  Aramark also contends that Gay's complaints of harassing behavior from Mark Buchanan, an Aramark district manager, are complaints of the sort of "petty slights, minor annoyances, and simple lack of good manners" that the Supreme Court has "expressly rejected as non-actionable."  (Docket Entry No. 6 at 18).  Aramark finally argues that Gay has failed to establish the necessary causal link between the complained-of actions and her filing of this lawsuit.

In response, Gay contends that she timely asserted her retaliation claim in her first amended petition on December 21, 2006, after receiving notice of her right to sue on October 23, 2006.  She does not otherwise address Aramark's arguments that her retaliation claim fails.

In its reply, Aramark argues that Gay's retaliation claim in her first amended petition was premature because she had failed to exhaust her administrative remedies as required by section 21.254 of the Texas Labor Code.  Gay filed an EEOC Charge of Discrimination complaining of the allegedly retaliatory activity on October 12, 2006.  She did not receive a right-to-sue notice based on this discrimination charge until January 22, 2007.

Aramark's argument that Gay's retaliation claim was untimely asserted is not persuasive.  Even if her claim for retaliation was premature in her first amended petition because she did not obtain a right-to-sue notice until January 22, 2007, she asserts the same

19

claim, based on the same facts, in her second amended petition, which she filed on February 2, 2007. The elements of a *prima facie* case of retaliation are that the plaintiff engaged in protected conduct, that she subsequently suffered an adverse employment action, and that the adverse employment action was taken in response to her protected conduct. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004) (citing *Chaney v. New Orleans Pub. Facility Mgmt, Inc.*, 179 F.3d 164, 167 (5th Cir. 1999)). Filing an EEOC complaint is protected activity. *Id.* (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)).

If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate rationale for the underlying employment action. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *Id.* The standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct. *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).

In *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006), the Supreme Court held that the antiretaliation provision of Title VII is not limited to ultimate employment actions. The provision "does not protect an individual from all retaliation, however, but only from retaliation that produces an "injury or harm." *Id.* at 12–13. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination." *Id.* at 13 (quotations omitted); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). The standard for harm is objective. *Burlington*, 126 S.Ct. at 2414. The harm must be material; Title VII does not protect an employee from trivial harms, "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 2413. The significance of any given act of retaliation depends upon the particular circumstances of the individual employee. *Id.* at 2414; *McCoy*, 492 F.3d at 560.

Gay testified in her deposition that following the incident with Murphy on the boat, she felt "harassed or pressured" at work. (Docket Entry No. 6, Ex. A at 169). She testified that Mark Buchanan, a district manager, "yelled at [her] in a disrespectful—in a disrespectful manner. He had used profanity to [her] on the phone in a disrespectful manner." (*Id.*, Ex. A at 170). She suffered a panic attack as a result. (*Id.*, Ex. A at 224). Gay also testified that at one point, Buchanan e-mailed the office receptionist and "told her on her cell phone to tell [Gay] not to call him" about a particular matter. (*Id.*, Ex. A at 265–66). When Gay turned in a report on the matter, "he wrote on the report [Gay] did not call him." (*Id.*, Ex. A at 266). Gay testified that on another occasion, Buchanan spoke to her "really in an angry manner, and to [her, she] thought it was disrespectful, and it wasn't professional." (*Id.*, Ex. A at 266). In Gay's presence, Buchanan asked Gay's colleague for a report that he said Gay never gave him. Gay asserted that she had written the report "a couple of weeks ago and he did know about it because he signed off on it. So at that point [by asking the colleague for the report] he was saying that [Gay] didn't do [her] job." (*Id.*, Ex. A at 267). Gay testified that another

colleague told her that Buchanan had said, "Stay away from that black bitch.  She got a manager fired for touching her on her ass at a company outing."  (*Id.*, Ex. A at 267).  Gay also testified that following a union meeting, Buchanan's "attitude towards [her] was just totally different. . . . [H]e was like looking at [her], rolled his eyes, and he was like mean towards [her] from that point on."  (*Id.*, Ex. A at 268).

Gay testified that Barbara Melchior, the controller, had a sign posted on her file cabinet that read, "A monkey is still a monkey even if you do work on a computer."  (Docket Entry No. 6, Ex. A at 269).  Gay "took it as racial."  (*Id.*, Ex. A at 269).  Gay also testified that Maxine Baggett, a colleague, had been "talking with a customer on the phone, and after she hung the phone up she called the gentleman a monkey," which offended Gay.  (*Id.*, Ex. A at 273).

Gay alleges in her response to Aramark's summary judgment motion that she "received on three separate incidents adverse treatments by her superiors."  (Docket Entry No. 10 at 13).  She asserts that she received unwritten warnings for her attendance, was accused by Buchanan for doing things she had not done, and was denied overtime work by Brian Gonzales.  In her complaint, Gay alleged that she received a written warning for attendance, even though she had only taken approved sick and personal leave and accrued vacation time.  She also alleged that Mark Buchanan "harassed" her about her work and accused her "of things for which [she] was able to provide proof that she was not the responsible party."  (Docket Entry No. 1, Ex. 5, Attachment D at 4).  She alleged that she was "singled out" when Brian Gonzales prohibited her from working overtime.  (*Id.*, Ex. 5,

Attachment D at 4). Gay does not point to evidence in the record to support these allegations.

To survive a summary judgment motion, a plaintiff cannot rest on her allegations, but rather must identify specific evidence in the record and articulate the manner in which that evidence supports her claim. *See Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). The record supports Gay's allegations that Buchanan indirectly accused Gay of not doing her job properly and acted in a hostile manner toward her, but Gay has not shown that such conduct rose to the level of a materially adverse action.

Aramark's motion for summary judgment on Gay's retaliation claim is granted.

### d.   Intentional Infliction of Emotional Distress

Aramark argues that Gay's intentional infliction of emotional distress is precluded by the Texas Supreme Court's decision in *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004). Aramark asserts that under *Zeltwanger*, "where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." (Docket Entry No. 6 at 19). Aramark also contends that under *Zeltwanger*, "if the complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim." (*Id.* at 19). Because the Texas Commission on Human Rights Act provides for mental anguish damages, and because Gay's "claim for intentional infliction of emotional distress is solely based on her allegations of

sexual harassment and assault," Aramark argues that Gay cannot state an independent claim for intentional infliction of emotional distress.  (*Id.* at 19).

Gay argues that she has established the necessary elements for a claim for intentional infliction of emotional distress.  She relies on *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 63 (Tex. 1998), for the proposition that "[o]nly when such behavior repeatedly becomes so forceful and intimidating that a reasonable person would feel immediately threatened or afraid can a court conclude with sufficient certainty that the actor intended to cause severe emotional distress or that severe emotional distress was the primary risk of the actor's conduct."  (Docket Entry No. 10 at 18).  Gay contends that Murphy sexually assaulted both her and Momon within one month and that Aramark, "understanding what a liability they had in Defendant Murphy, attempted to cover for Murphy's sexual assault by utilizing economic duress and other tactics to force Plaintiff Momon to sign a release."  (*Id.* at 18).

Gay's reliance on *Standard Fruit* is misplaced.  *Standard Fruit* was decided before *Zeltwanger* and involved a very different set of facts.  Gay does not otherwise address Aramark's argument that her claim for intentional infliction of emotional distress fails under *Zeltwanger*.

In *Zeltwanger*, the plaintiff asserted claims against her employer for violation of the Texas Commission on Human Rights Act based on sex discrimination and sexual harassment.  She also asserted a claim for intentional infliction of emotional distress.  A jury awarded the plaintiff approximately $8.5 million in damages for mental anguish and punitive

24

damages under her sexual harassment claim and approximately $9 million in damages under her intentional infliction of emotional distress claim.  The TCHRA caps statutory recovery for punitive and compensatory damages at $300,000.  The plaintiff elected to take her mental anguish and punitive damages under her intentional infliction of emotional distress claim and was able to recover more than the statutory cap.  On appeal, the Texas Supreme Court held that the tort of intentional infliction of emotional distress "simply has no application when the [defendant] intends to invade some other legally protected interest, even if emotional distress results."  *Zeltwanger*, 144 S.W.3d at 447.  Finding that the plaintiff's claim for intentional infliction of emotional distress was not independent of her sexual harassment claim under the TCHRA, the court held that "[b]ecause the [TCHRA] provides a remedy for the same emotional damages caused by essentially the same actions, there is . . . no support for the award of damages under the intentional-infliction claim."  *Id.* at 450.  The court also held that, to the extent that the plaintiff adduced proof of conduct that arguably formed an independent basis for a claim for intentional infliction of emotional distress, the evidence was insufficient to support the jury verdict.  *Id.*

In *Zeltwanger*, the Texas Supreme Court held that "[i]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim."  144 S.W.3d at 448.  The gravamen of Gay's claim is racial discrimination in the workplace and sexual harassment that occurred both at and outside the workplace.  She alleges that several of her colleagues and supervisors

discriminated against her because of her race.  She also alleges that Murphy often grabbed his crotch whenever he was with her and that he pinched her buttocks at the office.  In addition, she alleges that Murphy mauled her buttocks at the boat party for Aramark employees.  The parties do not dispute that the boat party was a work-sponsored social event.

With respect to Gay's allegations of Murphy's conduct at the boat party, Gay has established an independent basis for her claim for intentional infliction of emotional distress. The TCHRA provides a remedy only for sexual harassment that occurs in the workplace.  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 56, 74 (1986) (Marshall, J., concurring) ("With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.").  The incident at the boat party supports an independent basis for Gay's claim for intentional infliction of emotional distress.

However, Gay has failed to show that a fact issue exists as to whether Aramark can be held liable for Murphy's conduct at the boat party.  The Texas Supreme Court has established that "[t]he general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired."  *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002).  For an employee's acts to be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized.  *Id.* (citing *Smith*

*v. M. Sys. Food Stores, Inc.*, 297 S.W.2d 112, 114 (1957)).  If an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.  *Id.* (citing *ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 158 (Tex.App.—El Paso 1996, writ denied).  Applying Texas law, the Fifth Circuit has found that "an employer is not liable for the employee's intentional or malicious actions that are unforeseeable considering the employee's duties."  *Williams v. U.S.*, 71 F.3d 502, 506 n.10 (5th Cir. 1995).  Gay acknowledged in her deposition that before the boat party, she had not reported Murphy's conduct in the workplace to her supervisors at Aramark.  She testified that she had no reason to expect that Murphy would engage in such behavior at the party.  She also testified that the boat party was a social event at which no work was performed.  Gay has failed to show that fact issues exist as to whether Aramark should have foreseen Murphy's actions at the boat party, whether Murphy was acting in the scope of his employment, or whether Aramark can be vicariously liable for Murphy's actions.  Gay's claim for intentional infliction of emotional distress based on Murphy's conduct at the boat party fails.

With respect to Gay's claims for intentional infliction of emotional distress based on the alleged racial discrimination and sexual harassment that occurred in the workplace, Gay has failed to show the necessary independent basis.  She relies on the same evidence to show discrimination, sexual harassment, and a hostile work environment as she relies on to show intentional infliction of emotional distress.  She cannot circumvent the statutory recovery scheme by asserting a claim for intentional infliction of emotional distress.

Even if the "gap filler" basis for precluding relief under an intentional infliction claim were not present, Gay's claim for intentional infliction of emotional distress based on the workplace conduct of her colleagues other than Murphy fails on the second basis identified in *Zeltwanger*.  To recover damages for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.  Extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46).   Liability does not extend to insults, indignities, threats, annoyances, or petty oppressions.  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999); RESTATEMENT (SECOND) OF TORTS § 46 cmt. d.  It is for the court to determine, in the first instance, whether a defendant's conduct was "extreme and outrageous." *GTE Sw, Inc*., 998 S.W.2d at 616; RESTATEMENT (SECOND) OF TORTS § 46 cmt. h.  The facts that Gay alleges regarding racial discrimination, taken in the light most favorable to her, do not as a matter of law rise to the level of extreme or outrageous conduct.   In *Zeltwanger*, the court emphasized that an intentional infliction of emotional distress claim does not arise from most employment disputes, but instead exists in only the most unusual circumstances.   In that sexual harassment case, allegations and evidence of vulgar joke-telling, verbal abuse, unfair evaluations, and unfair and discriminatory job termination, did not, as a matter of law, rise

28

to the level of extreme or outrageous conduct.  144 S.W.3d at 448–49; *see also Benners v. Blanks Color Imaging, Inc*., 133 S.W.3d 364, 373 (Tex.App.–Dallas 2004, no pet. h.) ("In the workplace, to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer and discipline employees.  Although many of these acts are necessarily unpleasant for the employee, an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results.  Thus, a claim for intentional infliction of emotional distress does not lie for an ordinary employment dispute.") (internal citations omitted); *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000); *Foye v. Montes*, 9 S.W.3d 436, 440 (Tex. App–Houston [14th Dist.] 1999, pet. denied) ("Even conduct which may be illegal in an employment setting may not constitute the sort of behavior that constitutes 'extreme and outrageous' conduct.") (citing *Gearhart v. Eye Care Ctrs. of Am. Inc*., 888 F. Supp. 814, 819 (S.D. Tex. 1995)).  Similarly, Gay's allegations of criticism and hostility from her supervisors or colleagues do not, as a matter of law, rise to the level of extreme and outrageous conduct.

Aramark's motion for summary judgment on Gay's intentional infliction of emotional distress claim is granted.

### e.    Assault and Battery

In its summary judgment motion, Aramark contends that the assault and battery claim that Gay asserts against is barred because Murphy's alleged conduct was outside the course and scope of his employment.  Citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002), Aramark asserts that "[a]n employer is liable for an employer's tort

29

only when the tortious act falls within the scope of the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which the employee was hired." (Docket Entry No. 6 at 20). Aramark stresses that the boat party at which Gay alleges Murphy assaulted her was a social, voluntary, after-hours event. Gay also admitted in her deposition that there was no reason for Aramark to anticipate Murphy's actions at the boat party. Because the incident occurred outside the course and scope of Murphy's employment, Aramark argues that it cannot be held liable for assault.

In addition, Aramark argues that Gay's assault claim against Aramark is barred by the exclusivity provision of the Texas Worker's Compensation Act, Tex. Lab. Code Ann. §§ 406.034(a), 408.001. Aramark contends that because the TWCA provides the exclusive remedy for work-related injuries, Gay's assault claim fails.

In response, Gay relies on an Illinois case for the proposition that an injury must be job-related to be covered under the state workers' compensation act. She argues that the exclusivity provision of the TWCA does not bar civil actions against an employer for intentional misconduct. Although Aramark contends that it sent Murphy a warning letter after the incident on the boat, Gay maintains that the parties have not been able to engage in discovery regarding this element of Aramark's defense. Gay also contends Murphy's "serially predatory acts," first against her and then against Momon, show that Aramark did not have a viable antiharassment policy and did not exercise reasonable care in addressing Murphy's harassing conduct. (Docket Entry No. 10 at 16). Gay does not address Aramark's

argument that Aramark cannot be held liable for Murphy's assault on her during the party on the boat because it was not  within the scope and course of his employment.

As noted above, "[t]he general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores*, 80 S.W.3d at 577.  For an employee's acts to be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized. *Id.* (citing *Smith v. M. Sys. Food Stores, Inc.*, 297 S.W.2d 112, 114 (Tex. 1957)).  If an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.  *Id.* (citing *ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 158 (Tex.App.—El Paso 1996, writ denied).  Texas courts have found that an employer cannot beheld liable under a *respondeat superior* theory for assaults that take place away from the workplace, when no evidence establishes a connection between the assault and the employee's duties.  *See, e.g.*, *Capece v. Navisite, Inc.*, No. 03-02-00113-CV, 2002 WL 31769032, at *4–8 (Tex.App.—Austin Dec. 12, 2002, no pet.); *Houser v. Smith*, 968 S.W.2d 542, 544–46 (Tex.App.—Austin 1998, no pet.); *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 406 (Tex.App.—Corpus Christi 1987, no pet).  Applying Texas law, the Fifth Circuit has found that "it is not ordinarily within the scope of a servant's authority to commit an assault on a third person." *Bodin v. Vagshenian*, 462 F.3d 481, 485 (5th Cir. 2006) (citing *Tex. & P. Ry. Co. v. Hangenloh*, 247 S.W.2d 246, 241 (1952)).  The plaintiff bears the burden of

proving that the employee acted for reasons other than personal animus.  *Id.* (citing *Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797, 800 (Tex.App.—Amarillo 2004, pet denied)).  This is generally a question of fact, not law.  *Id.* (citing *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex.App.—Austin 2004, no pet.)).

Gay has failed to create a fact issue as to whether Murphy acted for reasons other than personal animus.  She points to no evidence in the record showing that when Murphy pinched Gay's buttocks in her office or when he grabbed her buttocks at the boat party, he acted "for the purpose of accomplishing the mission entrusted to him" by Aramark.  *Bodin*, 462 F.3d at 485 (citing *GTE Sw.*, 998 S.W.2d at 618)).  She admitted in her deposition that the boat party was a social event where no work occurred.  She has not otherwise shown that Murphy's actions at their workplace fell within the course and scope of his employment with Aramark.  Gay's claim for assault under a *respondeat superior* theory fails.

Gay's argument that Aramark is liable for an intentional tort is similarly unpersuasive.  Under Texas law, an employer may be directly liable for the intentional tort of its employee under a ratification theory.  *Skidmore v. Precision Printing and Packing, Inc.*, 188 F.3d 606, 614 (5th Cir. 1999).  An employer may ratify its employee's conduct through its own acts, conduct, or affirmative acquiescence.  *Id.* at 614–15 (citing *Little v. Clark*, 592 S.W.2d 61, 64 (Tex.Civ.App.—Ft. Worth 1979, writ ref'd n.r.e.)).  The employer's mere retention of the employee in service will not establish ratification.  *Id.* at 615 (citing *Durand v. Moore*, 879 S.W.2d 196, 203 (Tex.App.-Houston [14th Dist.] 1994, no writ);  *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 653–54 (5th Cir.1994)).  The employer's failure to repudiate

32

its employee's tortious act may sometimes establish ratification. *Id.* (citing Prunty, 16 F.3d at 653). In cases of employer silence as ratification, the employer must possess all material facts. *Id.* (citing *Sw. Bell Tel. Co. v. Wilson*, 768 S.W.2d 755, 764 (Tex.App.—Corpus Christi 1988, writ denied)). The plaintiff bears the burden of proving ratification. *Id.*

Gay has failed to create a fact issue as to whether Aramark ratified Murphy's actions. She argues that the parties have not been able to conduct discovery on the written warning that Aramark allegedly gave Murphy after Gay reported the boat incident. However, Brian Gonzales stated in his affidavit that he issued a "final written warning" to Murphy and instructed him "to avoid future interactions with Ms. Gay." (Docket Entry No. 6, Ex. C, ¶ 5). The parties do not dispute that this instruction was effective. After the boat incident on the boat, Gay encountered Murphy only once, while passing him in the hallway. Before the boat party, Gay had worked with Murphy regularly two or three times a week. The record shows that Aramark took action to ensure that Gay did not have to work or otherwise interact with Murphy following her complaint. Gay has not shown that Aramark failed to repudiate Murphy's actions such that any inaction on Aramark's part amounted to a ratification of his conduct.

Gay argues that Aramark did not exercise reasonable care in addressing Murphy's actions because Momon subsequently experienced similar harassment from Murphy at a different work location. This evidence does not raise a fact issue as to whether Aramark ratified Murphy's harassment of Gay. Gay has failed to create a fact issue as to whether Aramark is liable for an intentional tort by ratifying Murphy's actions.

Aramark's motion for summary judgment on Gay's assault and battery claim is granted.

### f.   Negligence and Gross Negligence

Aramark moves for summary judgment on Gay's negligence claims on the grounds that such claims are barred by the TWCA and TCHRA.  Aramark also argues that under the TWCA, gross negligence claims "may only be brought against a subscribing employer when the employer's intentional act or omission causes an employee's death."  (Docket Entry No. 6 at 23).

Gay advances the same arguments for her negligence claims as she did for her assault and battery claim.  She contends that Aramark engaged in "intentional misconduct" that is not barred by the TWCA.  (Docket Entry No. 10 at 16).  Citing the Texas Penal Code section on sexual assault, she argues that "when a Defendant from whom a Plaintiff seeks recovery of exemplary damages based on conduct described as a felony in the Texas Penal Code, the conduct is deemed to have been committed knowingly or intentionally."  (*Id.* at 17).  Gay also asserts that the TWCA does not bar her gross negligence claims because the TWCA's exclusivity provision does not preempt claims "based upon acts of misconduct such as sexual assault."  (*Id.* at 17).

The TWCA preempts Gay's negligence claims.  The Texas Supreme Court has found that the TWCA "is the exclusive remedy for work-related injuries with the exception of intentional injury."  *Reed Tool v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985) (citing *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981); *Middleton v. Tex.*

34

*Power & Light*, 185 S.W. 556, 560 (1916)).  "An injury caused by willful negligence or willful gross negligence is not an intentional injury necessary to avoid the effect of the Workers' Compensation Act."  *Id.* (citing *Castleberry*, 617 S.W.2d at 666).  Gay has failed to identify or submit evidence that could support an inference that Aramark acted intentionally to permit, encourage, or ratify Murphy's conduct.  The record shows that Aramark took steps to reprimand Murphy and ensure that he did not interact with Gay after the incident on the boat.  Gay's negligence claims are barred by the TWCA.

Aramark's motion for summary judgment on Gay's negligence and gross negligence claims is granted.

### B.      Murphy's Motions for Summary Judgment

#### 1.      Gwendolyn Momon

Murphy moves for summary judgment against Momon on the ground that she released her claims against him in March 2006 when she signed a release agreement as part of her settlement of her EEOC complaint against Aramark.  The agreement provided that Momon releases "current and former . . . employees" of Aramark "from any and all legal claims, complaints, suits, demand, liabilities or rights of any type, and those under any federal, state or local law or regulation that exist as of the date of this agreement." (Docket Entry No. 12, Ex. D).  The release agreement further stated, "You acknowledge that this Agreement resolves all legal claims you may have against [Aramark] and the others released in this agreement as of the date of the agreement, whether known or unknown."  (*Id.*).  Murphy argues that summary judgment is warranted because Momon "clearly expressed her intent

35

and desire to abandon her claims against and release all parties, including" Murphy. (Docket Entry No. 12 at 3).

In response, Momon argues that Murphy has failed to show that Momon voluntarily signed the release and that discovery is necessary to determine whether there is evidence of fraud, duress, or incompetence. Momon notes that Murphy "does not provide any affidavits, depositions, or discoverable materials" showing that she signed the release voluntarily. In addition, Momon also argues that even if her retention of the payment provided in exchange for her signature on the release constitutes a ratification of the release, such a ratification does not bar a claim for damages resulting from Aramark's fraud in obtaining the release.

Momon's argument that Murphy's summary judgment motion fails because he  has not shown that she signed the release voluntarily is not persuasive. Murphy submits a copy of the signed release agreement. Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract she signed, regardless of whether she read it or thought it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (citing *EZ Pawn Corp v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)). When parties enter into an agreement based on a writing that is not ambiguous, the court will give effect to the parties' intention as expressed in the writing. *Id.* (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)).

Momon's argument that she was induced by fraud or economic duress to sign the release agreement is similarly unpersuasive. She fails to point to or submit evidence in the record to support this contention. To survive a summary judgment motion, a plaintiff cannot

rest on her allegations, but rather must identify specific evidence in the record and articulate the manner in which that evidence supports her claim. *See Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). The record does not support Momon's argument that Aramark or Murphy coerced her into executing the release agreement in furtherance of "an ongoing scheme or practice to defraud lower-level sexually harassed victim-employees from any legitimate recovery." (Docket Entry No. 10 at 22).

Although Momon argues that additional discovery on her claims of fraud and duress is necessary before Murphy can move for summary judgment, Momon has failed to request a continuance for additional discovery or to show how such discovery will create a genuine issue of material fact. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006). Rule 56(f) authorizes a district court to order a continuance to permit additional discovery if the non-movant files affidavits showing that she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." *Id.* (citing *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992)). In requesting additional time for discovery under Rule 56(f), the nonmoving party must show why additional discovery is necessary and how that additional discovery will defeat the summary judgment motion by creating a genuine dispute as to a material fact. *Id.* (citing *Beattie v. Madison County School Dist.*, 254 F.3d 595, 605 (5th Cir. 2001)). The nonmoving party may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Id.* (citing *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 n.5 (5th Cir. 2002)). Momon alleges that she "can claim economic duress" and that Aramark "took

unjust advantage" of her economic necessity to coerce her into signing the release.  (Docket Entry No. 16 at 11).  Momon fails to identify evidence that discovery might produce to support her claims.  She has not shown how additional discovery will produce evidence that will create a fact issue as to whether the release is invalid.

Murphy's summary judgment motion against Momon is granted.

### 2.    Gwendolyn Gay

Murphy moves for partial summary judgment on Gay's claims for *quid pro quo* sexual harassment, hostile work environment sexual harassment claims, sexual discrimination, retaliation, intentional infliction of emotional distress, negligence, and gross negligence.  The parties' arguments on each claim are analyzed separately below.

### a.    Sexual Discrimination, *Quid Pro Quo* Sexual Harassment, Hostile Work Environment Harassment, and Retaliation

Murphy moves for summary judgment on the ground that supervisors and managers may not be held liable in their individual capacities under Title VII or the TCHRA.  In response, Gay relies on *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112 (5th Cir. 1981), for the proposition that "[a] party not specifically named in an employment discrimination complaint filed with the Equal Employment Opportunity Commission under Title VII may nonetheless be sued under Title VII where the EEOC investigation triggered by the complaint can reasonably be foreseen to include the unnamed party."  (Docket Entry No. 16 at 13).  Gay also cites other cases to support her argument that Murphy may be held liable for Title VII violations even though he was not named in Momon's EEOC complaint.  She does not

address Murphy's argument that he cannot be held individually liable for violations of Title VII or the TCHRA.

Gay's reliance on *Terrell* is misplaced.  *Terrell* did not involve whether an individual employee may be held liable for Title VII violations.  In *Terrell*, black steelworkers sued their local unions, alleging race discrimination in the unions' seniority system.  On appeal, the parties disputed whether the international parent unions could be held liable for Title VII violations when the steelworkers had failed to include the international unions in their EEOC complaint.  The Supreme Court vacated the judgment in *Terrell* and remanded the case for further consideration in light of *Pullman-Standard v. Swint*, 456 U.S. 273 (1982), which addressed whether a seniority system with a differential impact violated Title VII.  The holding of *Terrell* is inapposite to this case.

Under Title VII, an "employer" may not discriminate on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 200e-2.  An "employer" includes "any person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks . . . ."  *Id.* § 2000e(b).  The Fifth Circuit has held that an employee may not be held individually liable for a Title VII violation.  *See Ackel v. Nat'l Commc'ns., Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002)).

Similarly, under the Texas Commission on Human Rights Act, an "employer" may not discriminate on the basis of race, color, disability, sex, national origin, or age. Tex. Lab. Code. § 21.051.  An "employer" is "a person who is engaged in an industry engaged in an

industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks . . . ." *Id.* § 21.002(8). Texas courts have held that an individual cannot be held personally liable under the TCHRA. *See Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568 (Tex.App.—Houston [14th Dist.] 2004, no pet.); *Jenkins v. Guardian Inds. Corp.*, 16 S.W.3d 431, 439 (Tex.App.—Waco 2000, no pet.).

Gay has not alleged that Murphy is an "employer" under Title VII or the TCHRA. Murphy cannot be held personally liable under either statute. Murphy's summary judgment motion on Gay's sexual discrimination, *quid pro quo* sexual harassment, hostile work environment sexual harassment, and retaliation claims is granted.

### b. Intentional Infliction of Emotional Distress

Murphy also moves for summary judgment on Gay's claim for intentional infliction of emotional distress. He asserts that Gay's claim is precluded by *Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004). Because mental anguish damages are recoverable under the TCHRA, Murphy argues that Gay cannot prevail on an independent claim for intentional infliction of emotional distress.

The Texas Supreme Court has held that claims for intentional infliction of emotional distress that are premised on sexual harassment may not be brought against either an employer or a supervisor under the TCHRA. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2005) ("[The plaintiff's] complaints all stemmed from [the defendant supervisor's] lewd advances . . . . As her complaints are covered by other statutory remedies, she cannot assert them [against her employer or her supervisor] as intentional infliction claims . . . ."); *see also*

*Pacheco v. Zanios Foods, Inc.*, 502 F. Supp. 2d 508, 512 (W.D. Tex. 2006) ("[T]he Texas Supreme Court has held that IIED claims premised on sexual harassment may not be brought against either an employer or a supervisor."); *Martinez v. Computer Scis. Corp.*, No. A-05-CA-187-SS, 2005 WL 3414828 (W.D. Tex. May 16, 2005) (finding that under *Creditwatch*, "a plaintiff may no longer bring an IIED claim against a supervisor for workplace harassment under Texas law"). But the TCHRA provides a remedy only for sexual harassment that occurs in the workplace. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 74 (1986) (Marshall, J., concurring). Gay's claim for intentional infliction of emotional distress based on Murphy's actions at the boat party is not precluded by *Zeltwanger* or *Creditwatch*.

Under Texas law, the tort of intentional infliction of emotional distress requires that Gay show that (1) Murphy acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) Murphy's actions caused Condon emotional distress, and (4) the resulting emotional distress was severe. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740–41 (Tex.2003); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621. Emotional distress is "distress that is so severe that no reasonable person could be expected to endure it." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 718 (Tex. 1999). The record shows that fact issues exist as to whether Murphy's conduct on the boat was extreme and outrageous and whether the resulting emotional distress that Gay suffered was severe.

Murphy's summary judgment motion as to Gay's claim for intentional infliction of emotional distress is granted in part and denied in part.

### c.      Negligence and Gross Negligence

Murphy moves for summary judgment on Gay's claims for negligence and gross negligence on the ground that the TCHRA preempts these claims.  In addition, he argues that Gay has failed to create a fact issue as to these claims because she has failed to point to any evidence showing that he breached a duty that he owed to her.  With respect to Gay's gross negligence claim, Murphy asserts that Gay has also failed to show that he acted with malice or conscious indifference.

Gay argues that the TWCA and TCHRA do not preclude suits "when gross negligence is found or if the employer has engaged in intentional misconduct."  (Docket Entry No.16 at 19).  Citing the definition of "sexual assault" in the Texas Penal Code, Gay also argues that because her claim "is based on conduct described as a felony in the Texas Penal Code, the conduct is deemed to have been committed knowingly or intentionally."  (*Id.* at 20). Gay's arguments are not persuasive.  Her lawsuit against Murphy is not based on negligence, but on his intentional tortious conduct.  She admits in her response that "[s]ince Chris Murphy was a supervisor at the time of his vicious, predatory, sexually demeaning act, which directly caused physical injury to Plaintiff . . . he may be held liable under intentional tort." (Docket Entry No. 16 at 19).  In addition, she points to no evidence in the record that supports of claim for negligence or gross negligence.  Gay's claims for negligence and gross negligence fail.

42

Murphy's summary judgment motion on Gay's claims for negligence and gross negligence is granted.

## III.    Conclusion

Aramark's motion for summary judgment on Momon's claims is granted.  Aramark's motion for partial summary judgment on Gay's claims is granted.  Murphy's motion for summary judgment on Momon's claims is granted.  Murphy's motion for partial summary judgment on Gay's claims is denied in part and denied in part.  A status conference to address the remaining claims and set a schedule to resolve them is set for **December 19, 2007 at 2:00 p.m.** in Courtroom 11-B.

SIGNED on November 21, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

43